IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jeffrey Rogge,	Case No. 3:13CV1227

    Plaintiff

  v.	**ORDER**

Estes Express Lines, et al.,

    Defendant


    This is a personal injury suit arising out of a collision on the Ohio Turnpike on August 14, 2012 during the night time. Defendant Kendall Ray, driving a tractor-trailer eastbound for defendant Estes Express Lines, drove off the roadway and collided with a truck, operated by Willard Wheeler, that had run out of fuel. Wheeler had pulled his truck completely onto the berm. His rear lights were visible from about a mile away.

    Nothing in the evidence presently, or that has previously been before me, explains why Ray left the roadway.

    An Ohio State Highway Patrol Trooper had earlier stopped to investigate Wheeler's situation. The Trooper called for a tow truck and departed. Plaintiff Jeffrey Rogge arrived in a tow truck, which he parked in front of the disabled Wheeler vehicle. On responding to the call, Rogge had understood that he was to tow Wheeler's disabled truck.

Shortly thereafter, defendant Ray hit Wheeler's truck and shoved it forward. Rogge was between his tow truck and Wheeler's truck. On being shoved forward, Wheeler's truck pinned Rogge between the two vehicles.

As a result of the collision, for which I have found Ray, as to the three drivers, solely at fault, *see Wheeler v. Estes Express Lines,* --- F.Supp.3d ----, 2014 WL 5302970 (N.D. Ohio 2014),[1] Rogge suffered severe injuries, including loss of both his legs.

Pending are several pretrial motions in limine. This order states and briefly explains my reasons for my rulings on those motions.[2]

**1. Defendants' motion to exclude testimony of plaintiff's expert, Harvey Rosen (Doc. 77).**

One aspect of plaintiff's claim for damages is the cost for plaintiff's necessary future medical expenses. Plaintiff wants the jury to hear evidence of this amount calculated on the basis that plaintiff will live at least as long as fifty percent, twenty-five percent, and ten percent of his male cohort age group. Defendant objects to this evidence on the grounds that it is improper under Ohio law, and, in any event unreliable, unduly speculative, irrelevant, and excludable under Fed. R. Evid.

---

[1] The defendants have expressed the mistaken view that my statement that Ray's negligence was the "sole proximate cause," *Id.* at —, 2014 WL 5302970, *9, of Rogge's injuries somehow precludes Rogge from proceeding on his negligent hiring and retention claim against Estes. Not so: nothing having to do with anything as to that claim was before me as I was considering the various motions for summary judgment as to fault and comparative fault between the three drivers. I ruled neither expressly, implicitly, nor *sub silentio* that Rogge cannot pursue that claim against Estes.

[2] Given the number and bulk of many of the motions and the imminence of the trial date, the order does not contain, let alone elaborate, discussions of the law on which I base what are, essentially evidentiary issues. Suffice to say, in granting or denying the motions, I accepted the prevailing party's reasons and the law that party cited in support of the contentions I found persuasive.

403. The only proper basis for calculation, defendants argue, are the life expectancy and work life expectancy tables.

Among the least predictable of all life's events is, except where one has been diagnosed with an irreversible terminal illness or other condition, when death will occur. This being so, the law, not being able to assess damages on how long an injured person in fact will live – or even to guess at that period – uses life and work expectancy tables to cut the Gordian Knot of uncertainty. This is so, even though, as to any given individual, there is no way of knowing whether the resulting calculation over- or under-estimates reality. Nonetheless, using this conventional method provides at least a uniform benchmark.

Dr. Rosen presents no acceptable or reliable basis for his speculative computations. His choice of exclusively damage-enhancing percentages is telling. He certainly points to nothing that suggests that his choice of these three milestones is common practice among others in his field.

But that really doesn't matter: even if he and plaintiff had presented computations based on ninety and seventy-five percent of the cohort, the jury would have no firm guidance of any kind as to how to pick between those figures rationally.

As a matter of basic fairness – even though the result is probably almost never exactly on the mark – application of life and work expectancy tables is the meaningful way to give the jurors useful guidance in reaching a suitable figure as to damages for future consequences of an accident.

Motion to exclude testimony of plaintiff's expert, Harvey Rosen (Doc. 168), granted.

**2. Defendant's motion to exclude testimony of plaintiff's trucking expert, Thomas Corsi. (Doc. 78).**

Plaintiff wants his trucking expert, Dr. Thomas Corsi, to testify that, in his opinion, Ray's driving on the evening of the accident "can be characterized as egregiously unsafe" and that Estes,

3

in light of Ray's past driving record and performance, was negligent in hiring and then retaining him as a driver.

Defendants object to this proposed testimony on the ground that, as to both aspects, Mr. Corsi's testimony is unhelpful, cumulative, irrelevant, and unduly prejudicial.

With regard to the characterization of Ray's driving, that characterization is within the ken of the ordinary persons who will be on the jury. Counsel can certainly argue to the jury that driving off the roadway and striking a plainly visible disabled vehicle is egregiously unsafe. The jurors do not need an expert to help them, if they decide to do so, agree with that contention.

I disagree, however, with regard to Mr. Corsi's testimony about whether, based on his experience with the trucking industry and other qualifications (which defendants have not challenged), hiring and retention of Ray put other motorists at risk of harm. The defendants' challenges to his testimony in that regard go to weight, not admissibility.

Defendants' motion to exclude testimony of plaintiff's trucking expert, Thomas Corsi (Doc. 169), granted in part and denied in part.

**3. Defendants' motion in limine: exclude "preventability" determination. (Doc. 115)**.

The plaintiff wants to offer evidence from someone at Estes who, apparently, expressed the view to Ray that the accident was preventable; Estes had reached a similar conclusion with regard to an earlier accident involving Ray.

I agree that this evidence is not relevant. There is no evidence in the record as to the basis on which the person expressed that rather vague and indefinite opinion. There is no indication that the opinion is based on national, company, or personal standards. The opinion is, therefore, unreliable and the jury should not and will not hear it.

The defendants' motion to exclude "preventability" determination (Doc. 170), is granted.

## 4. Defendants' motion in limine: excluding witnesses concerning hiring and retention of Kendall Ray (Doc. 118).

Defendants want to exclude testimony by Estes' Director of Risk Management as to whether, if he were to be presented with Ray's past driving record, he would have hired him.

I agree with defendants that hypothetically-based testimony such as this cannot come from a non-expert witness.

Defendants' motion in limine: excluding witness concerning hiring and retention of Kendall Ray (Doc. 171) is granted.

## 5. Defendants' motion in limine: exclusion of evidence of moments leading up to the collision. (Doc. 119).

Based on the mistaken premise that plaintiff's claim of negligent hiring and retention is no longer part of this case, defendants seek to exclude evidence of events immediately preceding the accident.

I disagree with defendants' contention that this evidence is no longer relevant. Though, with regard to Ray, the triable issues relate to damages, the jury cannot decide that issue without some understanding of the accident itself. As I indicate below, I will permit Christopher Sweat, a truck driver who saw the accident, to testify about what he saw shortly before the collision. Plaintiff has agreed to withhold more lurid evidence – an OSHP dash cam recording that includes Rogge's screaming in pain.

Otherwise, subject to constraints that I may impose as evidence on this subject comes in, this evidence is admissible.

5

Defendants motion in limine: exclusion of evidence of moments leading up to the collision (Doc. 172) is overruled.

**6. Defendants' motion in limine: exclusion of future medical advances (Doc. 120).**

Plaintiff wants to offer expert testimony about the likely cost of treating plaintiff with as-yet undeveloped and non-existent medical devices and treatment modalities. Defendants object on the basis that such testimony would be entirely speculative.

The proposed testimony does not include reference to new treatments about to obtain FDA approval, in clinical trials, or being discussed in professional journals. While advances in the treatment of orthopedic injuries have been remarkable in recent decades, that they will continue to appear, be helpful to the plaintiff, and have price tags within a reasonably likely range is either not present or unreliable and speculative.

I grant defendants' motion in limine: exclusion of future medical advances. (Doc. 173).

**7. Defendants' motion in limine: events immediately following the collision. (Doc. 124).**

The plaintiff has agreed not to offer most of what the defendants objects to in this motion.

Plaintiff wants, however, to introduce a small set of photographs of blood on the ground where Wheeler's truck struck and pinned him against his tow truck. These, the plaintiff contends, are relevant to the issue of conscious pain and suffering. These photos are less gruesome than other evidence that plaintiff might offer – such as the dash cam recording of Rogge's screaming immediately after being injured. I agree with plaintiff that some more modest indicia of what it might have been like to be injured as, and to the extent that, Rogge was injured is permissible.

Plaintiff also wants to introduce an exculpatory statement that Ray made to the OSHP Trooper immediately after the accident, and evidence that his statement was false. Plaintiff contends that this evidence is probative on the issue of punitive damages.

I disagree. While a jury might view this evidence as exhibiting consciousness of responsibility for the collision, fault for the accident is not at issue.

To permit this evidence, as plaintiff desires, to stand as proof of consciousness of recklessness on Ray's part, and thus arguably relevant on the issue of punitive damages, is likewise impermissible. This is so, because it involves an inference on an inference.

The first inference is that Ray lied because he considered himself responsible for the accident. But to extend that inference to encompass the further inference that his sense of fault derived from an awareness that he had acted recklessly takes the first inference too far.

In any event, the risk of undue and unfair prejudice substantially outweighs the minimal probative value of this evidence.

The photos plaintiff will offer are admissible. The rest is not.

I grant the defendants' motion in limine: events immediately following the collision to the extent stated herein. (Doc. 174).

**8. Defendants' motion in limine: exclude testimony of Christopher Sweat. (Doc. 125).**

Defendant Ray passed Christopher Sweat, who was also driving a tractor-trailer eastbound on the Ohio Turnpike, just before he collided with Wheeler's disabled truck. Sweat had observed two trucks behind him. One of the trucks was driving erratically. He believes that that was Ray's vehicle, which he also believes was ahead of the other truck. Ray had passed him, then the other truck passed him.

7

Sweat cannot positively testify that the truck that he saw driving erratically before the two truck passed him was Ray's truck. Because he cannot be positive in that regard, defendants contend that I should exclude his testimony about what he saw before the collision.

I disagree: it is up to the jury to determine whether it can, in light of all the circumstances and events, conclude that the erratically driven truck was Ray's or the other vehicle. It can, taking all the circumstances into account, conclude that it was Ray's truck: Sweat saw only two trucks, one of which was moving erratically across lanes, and Ray, whose driving at the instant of the collision can fairly be described as erratic, was indisputably driving one of those two trucks.

If the jury reaches that conclusion, the evidence is relevant, and its probative value, at least with regard to the collision itself – and, potentially, on the issue of punitive damages – is evident. The risk of undue prejudice does not outweigh the probative value of the testimony.

I overrule defendants' motion in limine to exclude the testimony of Christopher Sweat. (Doc. 175).

**9. Defendants' motion in limine: exclusion of speeding as it relates to Kendall Ray. (Doc. 113).**

Defendants contend that there is no evidence that Ray was speeding prior to the accident. Assuming that that is so, coupled with defendants' contention that there was a governor on Ray's truck that kept his speed within the limit or below, I agree that there is no basis for any such evidence.

Defendants' motion in limine: exclusion of speeding as it relates to Kendall Ray (Doc. 113) is granted.

**10. Plaintiff's motion in limine to preclude evidence, inquiry, or argument regarding workers' compensation or the Affordable Care Act. (Doc. 176).**

Because plaintiff was working for his employer at the time of the collision, the Ohio Bureau of Workers Compensation (BWC) pays for 100% of his past and future expenses for treatment and care necessitated by the injuries he suffered. The BWC, in turn, has a statutory right of subrogation. There is, therefore, no basis on which defendants can or should be able to inform the jury about BWC coverage. (The defendants' opposition not discussing this aspect of plaintiff's argument, it appears, accordingly, that they agree with plaintiff's contention).

The defendants argue that I should allow their damages expert to testify about possible payments by private insurers if the plaintiff purchases insurance under the Affordable Care Act. According to the defendants, the ACA individual mandate makes it reasonably likely that the plaintiff will purchase private insurance. Even if that assumption were accurate – and it is, at best, questionable – there are two reasons, at least, why I agree with plaintiff that any testimony about what the ACA might require and what the plaintiff might do is not admissible.

First: plaintiff's purchase of insurance to provide additional coverage for his accident-related medical treatment and care would make no sense, given the 100% coverage he has from the BWC. Second, even if the plaintiff were, for some reason, to purchase such insurance, it would, in all likelihood, give the carrier a right of subrogation. While defendants dispute plaintiff's contention that insurance carriers now routinely insert subrogation clauses in their policies, they offer nothing to contradict that contention. In other words, any testimony about the presence or absence of a subrogation right in an insurance policy (that plaintiff is not likely to waste money buying) is just as speculative for the defendants as they claim it is for the plaintiff.

I grant plaintiffs' motion in limine to preclude evidence, inquiry or argument regarding workers' compensation or the Affordable Care Act (Doc. 176) is granted.

## Conclusion

For the foregoing reasons, it is hereby

ORDERED TH AT:

1. The following are granted: Defendants' motion to exclude testimony of plaintiff's expert Harvey Rosen (Doc. 77); Defendants' motion in limine to exclude "preventability" determination (Doc. 115); Defendants' motion in limine: concerning hiring and retention of Kendall Ray (Doc. 118); Defendants' motion in limine: exclusion of future medical advances (Doc. 120); Defendants' motion in limine: events immediately following the collision, to the extent provided herein (Doc. 124); Defendants' motion in limine: exclusion of speeding as it relates to Kendall Ray (Doc. 113); and plaintiff's motion in limine to preclude evidence, inquiry or argument regarding workers' compensation or the Affordable Care Act. (Doc. 176).

2. The following is granted in part and denied in part: Defendants' motion to exclude testimony of plaintiff's trucking expert, Thomas Corsi (Doc. 78).

3. The following are denied: Defendants' motion in limine: exclusion of evidence of moments leading up to the collision (Doc. 119); and Defendants' motion in limine to exclude the testimony of Christopher Sweat. (Doc. 125).

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge